MATTER OF B—

In Section 212(h) Proceedings

A-6230833

*Decided by Associate Commissioner April 13, 1966*

(1) "Extreme hardship" within the meaning of section 212(h), Immigration and Nationality Act, as amended, is established where applicant, unable to obtain employment abroad, for assistance has had to rely upon his United States citizen wife who is employed and who, in an effort to pay their debts of several thousand dollars resulting from his business failure about the time of departure, has practically impoverished herself; as a result of such strain her health has been impaired; liquidation of the debts is dependent upon his regular employment, and such has been offered if his admission is authorized.

(2) Notwithstanding a long period of marital discord prior to 1961, apparently of own making, and a pattern of irresponsible conduct between 1950 and 1960 which resulted in his 2 convictions for petty criminal offenses, since applicant has no criminal record after 1960; his present marriage appears stable; there is no evidence the multiple debts were incurred by wrongdoing nor has there been any effort to avoid their payment; he has reflected a responsible attitude in departing voluntarily in an effort to correct his immigration status, knowing the Service had been unable to effect his deportation; and there is no indication of fraud or misrepresentation in connection with his subsequent entries as a nonimmigrant, which were made at a time of great stress on the part of his wife, it is concluded his case merits the favorable exercise of the Attorney General's discretion and his applications for a waiver of the grounds of excludability pursuant to section 212(h) of the Act, as amended, and for permission to reapply are granted.

This case is before this office by certification pursuant to 8 CFR 103.4 for review of the Southeast Regional Commissioner's decision of January 17, 1966 denying the applicant's motion to reconsider that officer's decision of May 28, 1965 denying the applicant the waiver set out in the caption hereof, as a matter of discretion.

The applicant is a 41-year old married male, citizen of Jordan, who was born in Jerusalem, Palestine. He was last reported as being domiciled in Jerusalem-Jordan and temporarily residing in Montreal, Canada. The more serious ground for his excludability

from the United States arises under section 212(a)(9) of the Immigration and Nationality Act for two convictions of crimes involving moral turpitude, to wit:

(1) On April 7, 1951, in the Superior Court of Alameda County, California on a charge of issuing checks without sufficient funds for which he was sentenced to four years probation; and

(2) On May 22, 1959, in the Superior Court of Contra Costa County, California on a charge of issuing checks without sufficient funds for which he was sentenced to six months' imprisonment plus a period of probation. (In connection with the latter, there is an outstanding bench warrant issued in 1960, in absentia, for an alleged violation of the terms of his probation.)·

An additional ground of excludability exists under section 212(a)(17) of the Act, as an alien who has been arrested and deported, consent to reapply for admission not having been granted. An application has also been made for such consent.

Although never admitted to the United States for permanent residence, the applicant resided continuously in this country for more than 17 years between 1946 to 1963. In addition, he entered as a temporary visitor on three occasions in 1964. Full details of his immigration status and activity while here are set forth in a decision of the Board of Immigration Appeals, dated September 6, 1951; a decision of the District Director, Miami, dated April 30, 1965 and the Southeast Regional Commissioner's decision of May 28, 1965. The factual matters contained therein are incorporated by reference and will only be summarized here.

The applicant first entered the United States in 1946 as a student. An order of deportation was entered by the Board, on September 6, 1951, for failure to maintain his status. A warrant for his deportation was thereafter issued but could not be executed because of inability to obtain documents for his entry into any other country. He self-executed his deportation by his voluntary departure foreign on November 18, 1963.

From the time of his 1946 entry until late 1960, he resided principally in California. During that period he entered into three marriages, of which three United States citizen children were born. All of these marriages terminated in divorce and the children reside in California with their respective mothers. There are conflicting claims as to the extent of support contributed by the applicant for the care of these children, following the termination of the marriages. However, it is clear that any assistance rendered was sporadic. Notwithstanding this, it appears from the contents of letters to him from his children that they still esteem him.

During the period between 1950 and 1960 the applicant also followed a pattern of issuing checks for small sums on overdrawn

accounts. It is not clearly shown whether most of these were eventually paid up. In any event, this conduct only resulted in the two convictions previously referred to. Irrespective of the latter, the applicant's conduct clearly showed a complete lack of a sense of responsibility and disregard for the law, and he so concedes.

Late in 1960 he moved to New York City where he met his present wife, now a naturalized citizen, whom he married in 1961. They resided together until his voluntary departure, for the stated purpose of adjusting his immigration status and return to the United States, on November 18, 1963. About the time of his departure an import and export firm that he had established failed. From at least the time of this marriage until the failure of the firm he had maintained established credit. In addition, during all of the period of his New York residence, he had no arrest record. Following the failure of his firm he and his wife became the subjects of multiple civil suits for debts previously incurred. These debts totaled several thousand dollars. From the evidence, it appears that due to his unsettled immigration status as well as economic factors in the various countries in which he has resided since his departure he has been unable to obtain employment sufficient to maintain himself and has had to rely mainly on assistance from his wife. In fact, a United States Government officer who appeared personally at this office in his behalf stated that while the applicant was in Santiago, Chile (where he lived a major portion of the time following his 1963 departure) the opportunities for employment were so few as to barely provide "cigarette money" for the applicant. He further stated that the applicant always paid his debts there.

In the interim his spouse, who is employed, has practically impoverished herself in her effort to pay off the debts either jointly or severally incurred. She has submitted proof that some of these debts have now been paid in full and others are being liquidated to the extent that her limited means will allow. However, it appears that any substantial inroad is dependent upon her husband being able to obtain regular employment. (In this regard, he has been offered such employment here if his entry is authorized.) The record also contains medical evidence that his wife's health has been impaired by the strain which she is undergoing.

On the basis of the record it is concluded that the applicant's exclusion has resulted in extreme hardship to his United States citizen spouse, and will continue to do so. It is further found that his admission to this country would not be contrary to the national welfare, safety or security of the United States.

The sole remaining question is whether the applicant merits ex-

ercise of the Attorney General's discretion to consent to his applying for a visa and for admission to the United States. The Southeast Regional Commissioner has ruled that he does not and is of the opinion that the applicant's conduct and behavior of the more recent years has not been persuasive of any reformation on the applicant's part. The basis for this conclusion is fully set out in the decision of May 28, 1965 and need not be repeated here.

As a prefatory comment to the weighing of whether discretion should be favorably exercised, it must be borne in mind that, although a successful applicant under section 212(h) of the Act naturally gains a benefit, the basic purpose in granting a waiver is to render relief to a citizen or lawful resident alien who is in is to render relief to a citizen or lawful resident alien who is in extreme need thereof, unless to do so would be contrary to the good of the public in general. We have already found that the requisite hardship exists and that the applicant's admission would not be contrary to the public interest.

It is recognized that for a long period of years prior to 1961, the applicant's life was marked by marital discord, apparently of his own making, and a pattern of irresponsible conduct which eventually resulted in two convictions for petty criminal offenses. However, he has had no criminal record since 1960 and his present marriage, despite his unsuccessful previous ones, appears stable. The latter is evidenced by the persistence displayed by his wife in her efforts to enable him to rejoin her here as well as her many trips abroad to be with him.

The Regional Commissioner has drawn an adverse inference as to the applicant's reformation from the fact that the applicant (and his wife) became the subject of multiple civil suits late in 1963 and in 1964 for debts previously incurred. It is not believed that such an inference is warranted by the record. It is asserted by the applicant and his wife that these debt actions stemmed from his business failure. There is no evidence of wrong-doing in incurring them. It is also noted that no effort has been made to avoid their payment through the medium of bankruptcy proceedings or otherwise.

We draw a favorable inference as to a more responsible attitude on the part of the applicant from his voluntary departure in an effort to correct his immigration status, although he knew that the Service had been unable to effect his deportation.

The only substantial adverse information of record, following his 1963 departure, is the fact that, although excludable, he made three entries to this country in 1964, as a documented non-immigrant, and a statement from the American Consul in Santiago, Chile (with whom he had only official contact) expressing strong doubt as to his

integrity and good reputation in the community. With regard to the former, the record reflects that these entries were made during a period of great stress on the part of his wife and there is nothing to indicate that fraud or misrepresentation was involved in the obtaining of entry documents. As to the Consul's statement, opposed thereto is a letter from another United States Government official attesting to his personal acquaintanceship with the applicant in Santiago and his good character. In addition, there has been received, in connection with this review, a letter from another United States Government officer who also knew the applicant personally, which is entirely favorable to him. In each instance, the writers were aware of his prior difficulties. The record also contains statements from other responsible persons, who knew the applicant in New York City, which reflect favorably on his present character.

The applicant's earlier irresponsibility and misconduct cannot be, and are not, condoned. However, on the basis of the compassionate factors and present record it is concluded that, in the exercise of the Attorney General's discretion, the applications should be granted.

ORDER: It is ordered that the application of F—H—B—, also known as F—B—, for permission to reapply for admission to the United States after deportation be and is hereby granted.

It is further ordered that the application for waiver of excludability under section 212(a)(9) of the Immigration and Nationality Act, be and is hereby granted pursuant to the authority contained in section 212(h) of the Act, PROVIDED that the waiver shall apply only to the grounds for exclusion described herein.